## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **REUBEN PEMBERTON,** | ) | |
| 421 Quackenbos Street, NW | ) | |
| Washington, DC  20011 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| **DISTRICT OF COLUMBIA** | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **NICHOLAS MAJETT** | ) | |
| In His Personal and Individual Capacity | ) | |
| | ) | |
| Defendants. | ) | **<u>JURY TRIAL DEMANDED</u>** |
| **Serve:** | ) | |
| | ) | |
| **RABBIAH SABBAKHAN, DIRECTOR** | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **DEPARTMENT OF CONSUMER AND** | ) | |
| **REGULATORY AFFAIRS** | ) | |
| 1100 4th Street, SW | ) | |
| Washington, DC 20024 | ) | |
| | ) | |
| **VINCENT C. GRAY** | ) | |
| **MAYOR** | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| 1350 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20004 | ) | |
| | ) | |
| **IRVIN B. NATHAN** | ) | |
| **ATTORNEY GENERAL** | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **OFFICE OF THE ATTORNEY GENERAL** | ) | |
| 441 4th Street, NW | ) | |
| Washington, DC 20001 | ) | |
| | ) | |
| **NICHOLAS MAJETT** | ) | |
| In His Personal and Individual Capacity | ) | |

_____ )

## COMPLAINT

1. Plaintiff Reuben Pemberton ("Plaintiff" or "Mr. Pemberton") brings this action for damages based on the denial of his rights under the Federal Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the District of Columbia Family Medical Leave Act, DC Code 32-501 *et seq.* ("DCFMLA"); the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1401 *et seq.*, as amended (hereafter "DCHRA"); and 42 U.S.C. § 1983.

2. Defendant, the District of Columbia, discriminated against Mr. Pemberton based upon his disability and/or perceived disability; failed to provide accommodations for his disability; failed to provide FMLA leave; retaliated and interfered with his FMLA rights and illegally terminated him on or about September 28, 2013 in violation of the FMLA, DC FMLA, and DCHRA.  The District of Columbia also failed to pay Mr. Pemberton his full severance pursuant to D.C. Code §1-609.54(b) and D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3.

3. Defendant, Nicholas Majett, harassed and discriminated against Mr. Pemberton based upon his disability and/or perceived disability in violation of the DCHRA; aided and coerced discriminatory practices against Mr. Pemberton in violation of the DCHRA; and subjected Mr. Pemberton to intentional infliction of emotional distress.  Defendant Nicholas Majett is being sued in his personal and individual capacity.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331; the federal Family and Medical Leave Act, 29 U.S.C. § 2617; the District of Columbia Family and Medical Leave Act, D.C. Code 32-510; the District of Columbia

Human Rights Act, D.C. Code 2-1403.16; 42 U.S.C. § 1983; 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1367, as to the supplemental jurisdiction over pendent state law claims.

5.  This Court is the proper venue pursuant to 28 U.S.C. § 1391 in that Defendant, the District of Columbia government, illegally and wrongfully terminated Mr. Pemberton in the District of Columbia and the Department of Consumer and Regulatory Affairs, where Plaintiff worked, is headquartered in the District of Columbia.  Furthermore, the act, omission, and/or injury caused by Defendant Majett occurred in the District of Columbia.

## PARTIES

6.  Mr. Pemberton worked for the District of Columbia government at all times relevant to this cause of action.  Mr. Pemberton was employed with the District of Columbia's Department of Consumer and Regulatory Affairs ("Defendant" or "DCRA").   DCRA is an executive branch agency of the District of Columbia government.

7.  At all times relevant to this Complaint, Defendant Nicholas Majett was the Director of the DCRA.  Defendant Majett is an "employer" as defined under the DCHRA and he acted in the interest of the District of Columbia government, both directly and indirectly, with respect to the employment of Mr. Pemberton.

## FACTS

8.  The averments set forth in the foregoing paragraphs are adopted and incorporated herein by reference.

9.  Mr. Pemberton began his professional career with the District of Columbia government on or about April 15, 2008 as a full-time Analyst, CS-12, with DCRA.  He

was subsequently promoted to Administrative Officer, MSS-13 which was his position at the time of his termination.  Accordingly, Mr. Pemberton has more than three (3) years of employment with the District of Columbia government.

10. Mr. Pemberton worked in the Vacant Property Division of DCRA and he was Manager of the Enforcement Division.  His Division responded to complaints from DC residents regarding vacant or nuisance properties.  Mr. Pemberton was responsible for inspecting and registering vacant and blighted properties in the DC; enforcing tax compliance; and implementing nuisance abatement with the goal of moving abandoned properties into productive use.  He also oversaw tax assessments for dilapidated buildings, using taxation, eminent domain or other methods to develop decrepit and unused property.

11. Mr. Pemberton's hard work and dedication was well-known throughout the District and he was instrumental in developing blighted areas and rehabilitating properties.  He was often featured in news stories and articles touting his success and efforts in bringing owners of vacant properties into compliance, assessing fines and implementing the process to develop neighborhoods beset with vacant or run-down properties.  Numerous accolades and compliments were made by DC residents regarding Mr. Pemberton's professionalism, responsiveness, knowledge of nuisance abatement and efficient service.  Mr. Pemberton also established positive relationships with the Mayor's office, DC Council and Advisory Neighborhood Commissioners to facilitate his job and to assist with constituency requests regarding vacant or nuisance properties.

12. Mr. Pemberton's performance evaluations at DCRA, on a scale of 1-5, have always been at a minimum at least a 3 or above. Mr. Pemberton has never been disciplined or placed on a performance improvement plan. Mr. Pemberton's direct, first line supervisor was Paul Waters, Deputy Director for Enforcement and Legislative Affairs. Mr. Pemberton's second line supervisor was Defendant Nicholas Majett, former Director of DCRA.

13. In approximately October 2012, Mr. Pemberton asked Mr. Waters for a promotion to a MSS-14 position in his Division. The promotion Mr. Pemberton requested would give him more responsibility and a pay raise. In response, Mr. Waters advised Mr. Pemberton to speak to Defendant Majett directly about being promoted.

14. After weeks of discussions and advocating for the promotion, Defendant Majett finally agreed and, in or about October 2012, an announcement was made throughout DCRA that Mr. Pemberton would be promoted. However, Mr. Pemberton did not receive an increase in pay or grade. In fact, for the next three (3) months, Mr. Pemberton worked the new job and only received his normal pay at the MSS-13 level.

15. Finally, in approximately December 2012, Defendant Majett instructed DC Human Resources to increase Mr. Pemberton's grade to MSS-14 but only temporarily. Without any discussion or explanation, Defendant Majett made Mr. Pemberton's position "acting" which was contrary to the understanding Mr. Pemberton had when the promotion was approved in October 2012. [1]

16. Unfortunately, starting in approximately February 2013, Mr. Pemberton became ill due to enormous stress at work. Mr. Pemberton was facing significant pressure and

---

[1] Mr. Pemberton is not making a claim for this issue against the District of Columbia, it is background information only and no damages are being sought against the District of Columbia for Mr. Pemberton's three months of lost pay or for being placed in a temporary position.

having problems with Defendant Majett who had a vitriolic and acrimonious management style.  Although Mr. Pemberton was consistently doing an exemplary job and received numerous accolades, Defendant Majett nonetheless harassed and disparaged Mr. Pemberton.  Defendant Majett constantly berated Mr. Pemberton, openly humiliating him in front of his staff and others.  Defendant Majett created a hostile work environment and engaged in a campaign of harassment, intimidation and abuse against Mr. Pemberton.

17. This harassment caused Mr. Pemberton significant stress and he sought counseling through his workplace Employee Assistance Program (EAP).  The EAP vendor was Cope, Inc. ("Cope").

18. Mr. Pemberton informed his direct supervisor, Mr. Waters, that he was seeking counseling in February 2013 through EAP.  Mr. Pemberton had a good relationship with Mr. Waters and the two occasionally discussed the difficulties Mr. Pemberton was having, especially the harassment and ridicule by Defendant Majett.

19. In early 2013, Defendant Majett learned that Mr. Pemberton was seeking counseling. Defendant Majett knew that Mr. Pemberton was having mental health issues, in part, because Mr. Pemberton was having difficulty managing the stress and his behavior began to change during this time period.  Also, Mr. Pemberton took leave from the office to attend counseling sessions at Cope and had discussed the issues with Mr. Waters who, in turn, informed Defendant Majett.  Defendant Majett also knew that his hostile tirades against Mr. Pemberton were making Mr. Pemberton ill and that his conduct caused Mr. Pemberton to seek therapy.

20. Once he became aware that Mr. Pemberton was having mental health issues in early 2013, Defendant Majett escalated his harassment and hostility toward Mr. Pemberton. Defendant Majett harbored bias against Mr. Pemberton because of his mental health issues and he perceived Mr. Pemberton as being disabled.

21. Defendant Majett's mistreatment of Mr. Pemberton continued and caused so much anxiety that Mr. Pemberton often had to make emergency appointments with his therapist at Cope to discuss and deal with the hostile environment created by Defendant Majett.

22. Because of his discriminatory attitude toward Mr. Pemberton's disability, Defendant Majett took it upon himself to increase his outrageous torment of Mr. Pemberton and to make Mr. Pemberton's work environment unbearable and intolerable.

23. On or about May 17, 2013, completely out of the blue and with no warning, Defendant Majett demoted Mr. Pemberton back to a MSS-13 grade.  Despite his illness, Mr. Pemberton had been successfully managing his job duties while seeking therapy.  No one at DCRA told Mr. Pemberton that he was having performance problems or that his work was unsatisfactory.  Rather, when Mr. Pemberton asked for an explanation for the demotion, Defendant Majett told Mr. Pemberton that the agency was going through "realignment" and the grade 14 was no longer available.  Mr. Pemberton was unaware of any reorganization or other personnel changes that were taking place at DCRA and believes this is a false reason.  Defendant Majett demoted Mr. Pemberton as part of Defendant Majett's harassment and provocation of Mr. Pemberton because of his disability.

24. Other management officials at DCRA also began to perceive Mr. Pemberton as having a disability or being regarded as disabled.  In approximately May 2013, Catrina Jones, Chief of Staff and Stephanie Reich, Deputy Chief of Staff, met with Mr. Pemberton. Ms. Jones and Ms. Reich indicated that they could tell Mr. Pemberton was having some personal difficulties and they referred Mr. Pemberton to EAP.  Mr. Pemberton responded that he was already seeing a therapist at Cope.  Because Ms. Jones and Ms. Reich worked closely with Defendant Majett, Mr. Pemberton realized that Defendant Majett had likely arranged the meeting to further intimidate and threaten him.

25. Thereafter, Mr. Pemberton continued to balance his day-to-day duties of managing the Vacant Property Division of DCRA while attending therapy sessions at Cope.  On multiple occasions, Mr. Waters, Ms. Jones and Ms. Reich each asked Mr. Pemberton how therapy was going and if he was feeling any better.  Defendant Majett undoubtedly learned about Mr. Pemberton's health status from Mr. Pemberton's conversations with Mr. Waters, Ms. Jones and Ms. Reich.

26. Despite his efforts to get treatment, Mr. Pemberton's condition continued to worsen. During mid-summer 2013, Ms. Carolyn Stueve, Mr. Pemberton's therapist at Cope, diagnosed Mr. Pemberton as suffering from deep depression.  Mr. Pemberton was feeling very depressed, fixated with death and excessive self-medication.  Ms. Stueve determined that Mr. Pemberton needed to either admit himself to an in-patient treatment facility or see a psychiatrist on a regular basis.  Ms. Stueve and Mr. Pemberton searched for a DC based psychiatrist or program but could not find the right fit.  Meanwhile, Mr. Pemberton's depression was not being fully treated because the EAP sessions were no longer adequate.

27. On September 17, 2013, Defendant Majett called Mr. Pemberton into his office for an impromptu meeting.  Defendant Majett, without reason or cause, began to excessively berate and humiliate Mr. Pemberton during the meeting in front of an Advisory Neighborhood Commissioner.   Mr. Pemberton became violently ill from the harassment and outrageous tirade by Defendant Majett and started to experience an anxiety attack.  Mr. Pemberton also began to feel nauseous and almost vomited on Defendant Majett's desk.   Mr. Pemberton immediately excused himself from the meeting so as to not get sick in front of the Director.  Mr. Pemberton went directly to the restroom where he vomited from the stress, anxiety and harassment.

28. After cleaning himself up and becoming slightly more composed, Mr. Pemberton was able to contact Mr. Waters via email.  In his first email to Mr. Waters, Mr. Pemberton told him, "I am sick of getting beat up by Director Majett.  He has driven me to therapy and that is where I am going now."  In this same email, Mr. Pemberton also stated, "This is a hostile work environment and I can't stand it anymore.  I am taking the rest of today off, and tomorrow due to illness."

29. In a second email that same day, Mr. Pemberton informed Mr. Waters that he was "invoking his FMLA rights."   Mr. Pemberton entered his leave request on-line, through the peoplesoft portal, and DCRA granted sick leave for two and half (2.5) days or from September 17-19, 2013.  In the comments section of Mr. Pemberton's leave request, he noted "sick sick sick.  Doctors note to follow.  Invoking FMLA." Mr. Pemberton also received approved leave for September 20, 2013.

30. On September 18, 2013, Mr. Waters emailed Mr. Pemberton informing him that there were procedures for requesting FMLA leave, such as providing certification of illness

and an anticipated date of recovery.  Mr. Waters left a packet of FMLA information on Mr. Pemberton's office chair and Mr. Pemberton, who was still too sick to work, picked-up the documents after hours.  Mr. Waters and Mr. Pemberton exchanged several emails and had telephone calls on September 18 about work, Mr. Pemberton's FMLA leave request and medical condition.  Mr. Waters was well aware that Mr. Pemberton needed to be out of the office for an extended period of time to deal with his mental illness.

31. On September 20, 2013, Mr. Waters informed Mr. Pemberton by telephone that Defendant Majett wanted to terminate him by October 1, 2013.  Mr. Waters informed Mr. Pemberton that it was Mr. Pemberton's choice to resign or be fired.

32. Mr. Pemberton was surprised and stunned by the news that DCRA management wanted to terminate his employment.  Mr. Pemberton was on approved medical sick leave for a serious illness and he had initiated the FMLA process.  Mr. Pemberton thought the decision to terminate him had to be a mistake and he informed Mr. Waters that he was not going to resign from his job.  Mr. Waters then suggested that Mr. Pemberton negotiate an immediate transfer to another agency in lieu of resigning.

33. Mr. Pemberton, who was overwhelmed by his illness, was momentarily persuaded by Mr. Waters.  Mr. Pemberton was shocked to hear that he could lose his job while he was on approved leave and in the process of obtaining FMLA.  During their conversation, Mr. Waters was very convincing and insistent that Mr. Pemberton had no choice but to leave the agency.  Mr. Waters told Mr. Pemberton that he could resign and be paid a severance or be fired. He also threatened Mr. Pemberton, explaining that if he resigned, it would protect Mr. Pemberton's professional reputation, whereas if he

was fired, it would ruin any chance of getting a new job in DC government. Accordingly, Mr. Pemberton sent Mr. Waters an email, on the same day as their conversation, indicating that he was considering taking Mr. Water's advice about transferring to another agency.

34. Later that day, Mr. Waters sent Mr. Pemberton an email indicating that "they want a decision," pushing Mr. Pemberton to leave his job.  Accordingly, Mr. Pemberton sent another email to Mr. Waters informing him that his doctor was assisting him in completing the FMLA paperwork and he anticipated submitting it within the next few days.  Mr. Pemberton also stated to Mr. Waters that, "I hope to return to work as soon as I am better," a clear rejection of the scheme to force him from his job.

35. In yet another twist, after Mr. Pemberton sent his email with his intention to stay with DCRA, Mr. Waters called Mr. Pemberton to inform him that Defendant Majett had changed his mind about terminating Mr. Pemberton.  Mr. Waters instructed Mr. Pemberton to report to work on Monday, September 23, "business as usual."

36. Also on September 20, 2013, Mr. Pemberton had an appointment with a therapist in Silver Spring, MD who was a referral from his counselor at Cope.  The therapist advised Mr. Pemberton that he needed to be in intensive therapy and, in turn, referred Mr. Pemberton to see a psychiatrist immediately.  Mr. Pemberton scheduled an appointment with the psychiatrist for September 24, 2013.

37. On September 23, 2013, while preparing for work, Mr. Pemberton had another panic attack.  This time, however, Mr. Pemberton experienced a severe pain in his chest. Worried that he might be having a heart attack, Mr. Pemberton went to the emergency room at Virginia Hospital Center.  While at the emergency room, an EKG was

performed and blood tests were taken which did not indicate a major cardiac event. However, Mr. Pemberton was referred to a cardiologist for further testing and evaluation.

38. On that same day, Mr. Pemberton sent Mr. Waters an email with a status update on his condition.  Attached to his email, Mr. Pemberton provided Mr. Waters with the doctor's note from the emergency room physician and the note from the therapist he had seen on September 20, 2013, who had referred him for a visit with a psychiatrist that week.

39. In the note from the therapist, Nancy Henningsen, she explained that Mr. Pemberton was "suffering from acute mental stress due to complex life issues most especially his current employment situation.  He is exhausted emotionally, has difficulty sleeping, and should seek immediate and extended treatment from a psychotherapist and/or a psychiatrist.  This is a serious condition and will not be ameliorated by an occasional therapeutic session."  Mr. Pemberton also submitted a sick leave request until Thursday, September 26, 2013.

40. Mr. Pemberton also explained to Mr. Waters in his September 23 email that he needed to take the leave he requested because, "I still have to see a psychiatrist about my mental health and I am trying to do that, and the heart doctor this week."  Mr. Pemberton also tried to reassure Mr. Waters in his email, stating that "With any luck a few days rest will allow me to return to DCRA and keep doing the good work that we do."

41. After seeing the psychiatrist, Mr. Pemberton was admitted to the INOVA Behavioral Health Partial Hospitalization Program in Fairfax, VA on September 26, 2013.  The

INOVA hospital treatment consists of a daily program of therapy and counseling with nurses and psychiatrists. Mr. Pemberton was admitted into the program for a full two (2) weeks.

42. Despite his serious medical illness, Mr. Pemberton nonetheless sent an email to Mr. Waters on September 26, 2013, informing him of his medical condition and that he would be in intensive therapy for at least a month, if not longer. Mr. Pemberton also submitted an on-line request to extend his sick leave. Further, Mr. Pemberton submitted the initial part of his FMLA request to Mr. Waters which requested medical leave from September 26, 2013 until December 13, 2013. Mr. Pemberton explained that his doctor at INOVA, Dr. Singh, would be completing the rest of the certification as soon as he could.

43. In a blatant violation of the law, Mr. Waters called Mr. Pemberton while he was at INOVA hospital seeking treatment for his serious medical illness. Mr. Waters once again informed Mr. Pemberton that Defendant Majett wanted Mr. Pemberton to resign or else he would be fired. Mr. Waters again insisted and tried to convince Mr. Pemberton that the best course of action would be to resign.

44. Fatigued and needing medical treatment, Mr. Pemberton did not respond to the unreasonable request to resign which was instigated by Defendant Majett. Mr. Pemberton was in treatment and had invoked FMLA. As such, it is plain that such coercion and duress from DCRA management officials was interference with Mr. Pemberton's FMLA rights and that the threat to terminate him was retaliatory.

45. On Friday, September 27, 2013, Mr. Pemberton submitted his doctor's FMLA certification to Mr. Waters via email and fax.  Mr. Waters confirmed receipt of the documentation on the same day.

46. In the FMLA certification form Mr. Pemberton submitted on September 27, 2013, Dr. Singh explained that Mr. Pemberton had "significant mood and anxiety symptoms with inability to function at work."  Dr. Singh also elaborated that Mr. Pemberton would be at the INOVA program for a five (5) week period and that, upon discharge, Mr. Pemberton would continue to need one therapy appointment every week and a psychiatrist appointment once every other week.  Dr. Singh estimated that Mr. Pemberton's condition commenced in February 2013 and the current duration of incapacity would be from September 17, 2013 until an estimated date of October 31, 2013.  Dr. Singh further indicated that Mr. Pemberton was being provided with individual psychotherapy, intensive outpatient group therapy and prescription medications and management with a psychiatrist.  Dr. Singh was unequivocal in his assessment that Mr. Pemberton was "unable to perform any work at this time."

47. On September 28, in addition to the September 27 email to Mr. Waters, Mr. Pemberton also arranged to send three (3) complete copies of his FMLA submission to DCRA.  DCRA never responded to Mr. Pemberton's FMLA request which was submitted within a reasonable timeframe and in accordance with the law.

48. Instead, on September 28, 2013, in direct violation of the law, Mr. Pemberton received an email from Mr. Waters terminating his employment.  Although Mr. Waters sent the email on September 27, 2013, Mr. Pemberton did not access the email until the following day and was unable to view the document terminating his employment

attached to the email.   Mr. Waters stated that, under direction from DCRA management, namely Defendant Majett, he was sending the email to Mr. Pemberton to terminate his employment and that a hard copy was being concurrently sent to Mr. Pemberton's residential address.

49. Mr. Pemberton had a right under DCFMLA for up to 16 weeks of unpaid leave in a 24-month period.

50. Additionally, District of Columbia government employees are also covered by the federal Family and Medical Leave Act which provides for up to 12 weeks of unpaid leave in a 12-month period.

51. The District of Columbia failed to post FMLA rights and information conspicuously at DCRA such that Mr. Pemberton would have knowledge of his rights under the law.

52. The District of Columbia failed to identify an FMLA coordinator for DCRA once Mr. Pemberton informed Mr. Waters of his intent to tale leave under FMLA.  As a result, the District of Columbia allowed Mr. Waters access to confidential and private medical information about Mr. Pemberton which is in violation of the FMLA.

53. The District of Columbia interfered, restrained, prevented and denied Mr. Pemberton from excising and/or attempting to excise his rights under the federal and DC FMLA by terminating him rather than allowing him to take FMLA leave.

54. The District of Columbia terminated Mr. Pemberton in retaliation for excising and/or attempting to excise his right to take approved leave under the federal and DC FMLA.

55. The District of Columbia failed to provide Mr. Pemberton with a reasonable accommodation for his disability and, instead of granting him leave for his serious

medical illness, terminated his employment on or about September 28, 2013 in violation of the DCHRA.

56. Defendants the District of Columbia and Majett discriminated against Mr. Pemberton based upon his disability and/or perceived disability by terminating his employment on or about September 28, 2013 in violation of the DCHRA.

57. Defendant Majett created a hostile work environment, harassed and discriminated against Mr. Pemberton based upon his disability and/or perceived disability in violation of the DCHRA.

58. Defendant Majett aided and coerced discriminatory practices against Mr. Pemberton because of his disability and/or perceived disability in violation of the DCHRA.

59. Defendant Majett subjected Mr. Pemberton to intentional infliction of emotional distress.

60. The District of Columbia Code provides that an employee holding the position of Management Supervisory Service must be paid a severance upon separation for non-disciplinary reasons according to the length of the individual's employment. Specifically, "[i]n accordance with section 954 of the CMPA (D.C. Code §1-609.54(b)), an employee in the Management Supervisory Service shall be entitled to severance pay upon termination for non-disciplinary reasons." [2]

61. Mr. Pemberton began his career with the District of Columbia government in 2008 and had more than three (3) years of service at the time of his termination in 2013.

---

[2] D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3 is also reference in the E-District Personnel Manual.

62. Pursuant to D.C. Code §1-609.54(b), an employee in the Management Supervisory Service with more than three (3) years of employment is entitled to ten (10) weeks of severance pay when that employee is terminated for non-disciplinary reasons.

63. The District of Columbia government only paid Mr. Pemberton two (2) weeks of severance pay upon his termination.  This is eight (8) weeks less than Mr. Pemberton's entitlement under D.C. Code §1-609.54(b).

64. Mr. Pemberton has a legitimate claim of entitlement to his full severance pay of ten (10) weeks pursuant to law, D.C. Code §1-609.54(b), and regulation, D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3.

65. Under 42 U.S.C. § 1983, the District of Columbia government violated Mr. Pemberton's Fifth and Fourteenth Constitutional Amendment property interest to his full severance pay of ten (10) weeks.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

66. Plaintiff has exhausted all administrative remedies by filing a Charge of Discrimination with the D.C. Office of Human Rights which was cross-filed with the Equal Employment Opportunity Commission.  Plaintiff further provided the District of Columbia with notice of his claims pursuant to Section 12-309 of the DC Code.

**Count I:  Violation of the Federal Family and Medical Leave Act ("FMLA")**
**Interference and Retaliation Claim Against the District of Columbia**

67. Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

68. Under the FMLA, an "eligible employee" is entitled to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1) (2013).

69. An "eligible employee" is one "who has been employed for at least 12 months by the employer with respect to whom leave is requested…for at least 1,250 hours of service with such employer during the previous 12-month period, [and] is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a) (brackets added).

70. At all times pertinent and relevant to this complaint, Mr. Pemberton was an FMLA-eligible employee, as he had been employed by the District of Columbia since April 15, 2008, without a break in employment or service, exceeding twelve (12) months worked.  Mr. Pemberton held a full-time position for his entire employ with the District of Columbia and worked at least 1,250 hours during the twelve (12) months preceding the date of FMLA.

71. A city or town is considered a single public agency and, therefore, a single employer for purposes of determining employee eligibility under the FMLA. 29 C.F.R. § 825.108(c)(1).

72. The District of Columbia is subject to the requirements of the FMLA as a public, government agency.

73. A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care…or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

74. "Continuing treatment" includes "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves treatment two or more times, within 30 days of the first day of incapacity…by a health care provider…or treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." "[T]reatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(1)-(3).

75. Mr. Pemberton's medical condition of depression qualified as a serious health condition, as it prevented him from performing the functions of his job; Mr. Pemberton had on-going and continuing treatment from his health care providers, including emergency room treatment and hospitalization; Mr. Pemberton had periods of incapacity; and his condition included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

76. In 2013, Mr. Pemberton was frequently absent due to his serious health condition of major and severe depression.  The District of Columbia, and/or agents or employees acting on its behalf, failed to engage in an interactive process with Mr. Pemberton and failed to determine whether FMLA leave should have been approved and granted

either on an intermittent leave basis as medically necessary to seek treatment from his health care providers and/or on a continuous leave basis.

77. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c).

78. "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits…." 29 C.F.R. § 825.214.

79. The District of Columbia terminated Mr. Pemberton on or about September 28, 2013 while he was attempting to exercise his entitlement under FMLA leave.  The District of Columbia restrained, denied, prevented and interfered with Mr. Pemberton's rights and effective use of FMLA leave.

80. The District of Columbia terminated Mr. Pemberton on or about September 28, 2013 in retaliation for excising and/or attempting to excise his right to take approved leave under FMLA.

81. The District of Columbia, and/or agents or employees acting on its behalf, failed to provide Mr. Pemberton with sufficient and adequate notification of his rights under the FMLA; did not offer Mr. Pemberton FMLA leave for his serious medical condition; failed to respond to Mr. Pemberton's request for FMLA leave and violated his rights by threatening Mr. Pemberton with termination rather than advising Mr. Pemberton of his rights under FMLA.

82. The District of Columbia did not have a legitimate business reason for its decision to terminate Mr. Pemberton.

83. As a result of the District of Columbia's violations of FMLA, Mr. Pemberton has suffered loss of employment and loss of wages and benefits.  As a consequence of the District of Columbia's unlawful actions, Defendant is additionally liable to Mr. Pemberton for those damages as well as an additional amount as liquidated damages, attorneys' fees, the costs of litigation, and accrued interest.

**Count II:  Violation of the DC Family and Medical Leave Act ("DCFMLA")
Interference and Retaliation Claim Against the District of Columbia**

84. Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

85. At all times pertinent and relevant to this complaint, Mr. Pemberton was a DCFMLA-eligible employee, as he had been employed by the District of Columbia since April 15, 2008, without a break in employment or service, exceeding twelve (12) months worked.  Mr. Pemberton held a full-time position for his entire employ with the District of Columbia and worked at least 1,000 hours during the twelve (12) months preceding the date of DCFMLA.

86. The District of Columbia is subject to the requirements of the DCFMLA as a public, government agency.

87. Mr. Pemberton's medical condition of depression qualified as a serious health condition, as it prevented him from performing the functions of his job; Mr. Pemberton had on-going and continuing treatment from his health care providers, including emergency room treatment and hospitalization; Mr. Pemberton had periods of incapacity; and his condition included symptoms of suicidal thoughts, recurrent

panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

88. In 2013, Mr. Pemberton was frequently absent due to his serious health condition of major and severe depression.  The District of Columbia, and/or agents or employees acting on its behalf, failed to engage in an interactive process with Mr. Pemberton and failed to determine whether DCFMLA leave should have been approved and granted either on an intermittent leave basis as medically necessary to seek treatment from his health care providers and/or on a continuous leave basis.

89. The District of Columbia terminated Mr. Pemberton on or about September 28, 2013 while he was attempting to exercise his entitlement under DCFMLA leave.  The District of Columbia restrained, denied, prevented and interfered with Mr. Pemberton's rights and effective use of DCFMLA leave.

90. The District of Columbia terminated Mr. Pemberton on or about September 28, 2013 in retaliation for excising and/or attempting to excise his right to take approved leave under DCFMLA.

91. The District of Columbia, and/or agents or employees acting on its behalf, failed to provide Mr. Pemberton with sufficient and adequate notification of his rights under the DCFMLA; did not offer Mr. Pemberton DCFMLA leave for his serious medical condition; failed to respond to Mr. Pemberton's request for DCFMLA leave and violated his rights by threatening Mr. Pemberton with termination rather than advising Mr. Pemberton of his rights under DCFMLA.

92. The District of Columbia did not have a legitimate business reason for its decision to terminate Mr. Pemberton.

93. As a result of the District of Columbia's violations of DCFMLA, Mr. Pemberton has suffered loss of employment and loss of wages and benefits.  As a consequence of the District of Columbia's unlawful actions, Defendant is additionally liable to Mr. Pemberton for those damages as well as an additional amount as liquidated damages, attorneys' fees, the costs of litigation, and accrued interest.

**Count III:  Violation of the District of Columbia Human Rights Act, As Amended**
**Failure to Accommodate Against the District of Columbia**

94. Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

95. The DCHRA prohibits employers from discriminating against its employees because of a disability.

96. The District of Columbia was, at all times relevant to this matter, the employer of Mr. Pemberton for all purposes under the DCHRA.

97. Mr. Pemberton's medical condition of severe and major depression is a disability.  Mr. Pemberton's disability caused him to have periods of incapacity and his condition included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

98. Mr. Pemberton's disability of severe and major depression caused him to be substantially limited in the major life activities of working, sleeping and concentrating, among others.

99. The District of Columbia and/or agents or employees acting on its behalf, were aware of Mr. Pemberton's disability of severe and major depression and were informed by Mr. Pemberton and his health care providers of Mr. Pemberton's need of an accommodation due to his disability.

100.    The District of Columbia and/or agents or employees acting on its behalf failed to provide Mr. Pemberton with a reasonable accommodation and failed to engage in an effective interactive process and communication with Mr. Pemberton and/or his health care providers to determine an appropriate and reasonable accommodation for Mr. Pemberton as required by law.

101.    The District of Columbia and/or agents or employees acting on its behalf denied Mr. Pemberton leave, threatened to terminate his employment if he did not return to work, and ultimately terminated his employment although he had sufficient leave accrued to engage in treatment of, and therapy for, his disability of severe and major depression.

102.    The District of Columbia and/or agents or employees acting on its behalf failed to allow Mr. Pemberton to use available leave as a reasonable accommodation and failed to take other measures, such as but not limited to, a modified work schedule, telecommuting and/or other such reasonable accommodations which would have allowed Mr. Pemberton to return to work and to continue to perform the essential functions of his job.

103.    Mr. Pemberton alleges that the District of Columbia, and/or agents or employees acting on its behalf, failed to provide him with a reasonable accommodation, terminated his employment and subjected him to other adverse and disparate treatment that interfered with, and negatively impacted, the terms and conditions of Mr. Pemberton's employment.

104.    As a direct and proximate result of the unlawful conduct by the District of Columbia, Mr. Pemberton has suffered and is suffering considerable injury.  This harm

includes, but is not limited to, loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career-enhancing and advancement opportunities and loss of retirement savings and other employment benefits and privileges.

105.     Mr. Pemberton has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of the District of Columbia and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

106.     As a consequence of the District of Columbia's unlawful actions, the District of Columbia is additionally liable to Mr. Pemberton for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### Count IV:  Violation of the District of Columbia Human Rights Act, As Amended Discrimination Based Upon Disability and/or Perceived Disability Against the District of Columbia - Termination

107.     Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

108.     The DCHRA prohibits employers from discriminating against its employees because of a disability, perceived disability and/or having a record of disability.

109.     The District of Columbia was, at all times relevant to this matter, the employer of Mr. Pemberton for all purposes under the DCHRA.

110.     Mr. Pemberton's medical condition of severe and major depression is a disability. Mr. Pemberton's disability caused him to have periods of incapacity and his condition

included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

111.    Mr. Pemberton's disability of severe and major depression caused him to be substantially limited in the major life activities of working, sleeping and concentrating, among others.

112.    The District of Columbia and/or agents or employees acting on its behalf, were aware of Mr. Pemberton's disability of severe and major depression.  The District of Columbia and/or agents or employees acting on its behalf further perceived Mr. Pemberton as being disabled or having a record of disability.

113.    Mr. Pemberton alleges that the District of Columbia and/or agents or employees acting on its behalf, subjected him to discrimination on the basis of his disability, perceived disability or having a record of disability, by terminating his employment.

114.    The District of Columbia knew of Mr. Pemberton's disability when it terminated his employment and it further perceived Mr. Pemberton as being disabled or having a record of disability.

115.    The District of Columbia and/or agents or employees acting on its behalf, terminated Mr. Pemberton's employment because of his disability, perceived disability and/or having a record of disability.  This and other adverse and disparate treatment by the District of Columbia constitutes illegal discrimination against Mr. Pemberton because of his disability, perceived disability and/or having a record of disability in violation of the DCHRA.

116.    As a direct and proximate result of the unlawful conduct by the District of Columbia, Mr. Pemberton has suffered and is suffering considerable injury.  This harm

includes, but is not limited to, loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career-enhancing and advancement opportunities and loss of retirement savings and other employment benefits and privileges.

117.    Mr. Pemberton has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of the District of Columbia and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

118.    As a consequence of the District of Columbia's unlawful actions, the District of Columbia is additionally liable to Mr. Pemberton for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### Count V:  Violation of the District of Columbia Human Rights Act, As Amended Discrimination and Harassment Based Upon Disability and/or Perceived Disability Against the District of Columbia – Harassment and Hostile Work Environment

119.    Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

120.    The DCHRA prohibits employers from discriminating against its employees because of a disability, perceived disability and/or having a record of disability.

121.    The District of Columbia was, at all times relevant to this matter, the employer of Mr. Pemberton for all purposes under the DCHRA.

122.    Mr. Pemberton's medical condition of severe and major depression is a disability. Mr. Pemberton's disability caused him to have periods of incapacity and his condition

included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

123.     Mr. Pemberton's disability of severe and major depression caused him to be substantially limited in the major life activities of working, sleeping and concentrating, among others.

124.     The District of Columbia and/or agents or employees acting on its behalf, were aware of Mr. Pemberton's disability of severe and major depression.  The District of Columbia and/or agents or employees acting on its behalf further perceived Mr. Pemberton as being disabled or having a record of disability.

125.     Mr. Pemberton alleges that the District of Columbia and/or agents or employees acting on its behalf, subjected him to discrimination and harassment on the basis of his disability, perceived disability or having a record of disability, by demoting Mr. Pemberton to a MSS-13 grade; denying him leave; subjecting him to harassment and a hostile work environment that had a negative impact on the terms and conditions of his employment and which unreasonably interfered with his ability to work.

126.     The District of Columbia and/or agents or employees acting on its behalf, demoted Mr. Pemberton, denied Mr. Pemberton leave, and harassed him by threatening to terminate his employment.  This and other adverse and disparate treatment by the District of Columbia constitutes illegal discrimination against Mr. Pemberton because of his disability, perceived disability and/or having a record of disability in violation of the DCHRA.

127.     As a direct and proximate result of the unlawful conduct by the District of Columbia, Mr. Pemberton has suffered and is suffering considerable injury.  This harm

includes, but is not limited to, loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career-enhancing and advancement opportunities and loss of retirement savings and other employment benefits and privileges.

128.    Mr. Pemberton has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of the District of Columbia and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

129.    As a consequence of the District of Columbia's unlawful actions, the District of Columbia is additionally liable to Mr. Pemberton for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### Count VI:  Constitutional Violation of Fifth and Fourteenth Amendment Protected Property Interest In Severance Pay Against the District of Columbia 42 U.S.C. § 1983

130.    Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

131.    D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3 provides that "an employee in the Management Supervisory Service shall be entitled to severance pay upon termination for non-disciplinary reasons."

132.    The District of Columbia Code also provides that an employee holding the position of Management Supervisory Service must be paid a severance upon separation for non-disciplinary reasons according to the length of the individual's employment at the basic rate of pay at the time of termination.

133.    Mr. Pemberton began his career with the District of Columbia government in 2008 and had more than three (3) years of service at the time of his termination in 2013.

134.    Mr. Pemberton was terminated for non-disciplinary reasons.

135.    Pursuant to D.C. Code §1-609.54(b), Mr. Pemberton is entitled to ten (10) weeks of severance pay upon his termination at his basic rate of pay.

136.    The District of Columbia government only paid Mr. Pemberton two (2) weeks of severance pay upon his termination.

137.    Mr. Pemberton has a legitimate claim of entitlement to the eight (8) weeks of severance pay that the District of Columbia government failed to pay him pursuant to law, D.C. Code §1-609.54(b), and regulation, D.C. Personnel Regulations Chapter 38-Management Services Section 3813.3.

138.    Under 42 U.S.C. § 1983, the District of Columbia government violated Mr. Pemberton's Fifth and Fourteenth Constitutional Amendment property interest to his full severance pay of ten (10) weeks.

**Count VII:  Violation of the District of Columbia Human Rights Act, As Amended Discrimination, Harassment, Hostile Work Environment and Aiding and Abetting Discriminatory Practices Based Upon Disability and/or Perceived Disability Against Defendant Majett**

139.    Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

140.    The DCHRA prohibits employers from discriminating against its employees because of a disability, perceived disability and/or having a record of disability.

141.    Defendant Majett is an "employer" as defined under the DCHRA and he acted in the interest of the District of Columbia government, both directly and indirectly, with respect to the employment of Mr. Pemberton.  Defendant Majett is being sued in his personal and individual capacity.

142.    Mr. Pemberton's medical condition of severe and major depression is a disability. Mr. Pemberton's disability caused him to have periods of incapacity and his condition included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

143.    Mr. Pemberton's disability of severe and major depression caused him to be substantially limited in the major life activities of working, sleeping and concentrating, among others.

144.    Defendant Majett was aware of Mr. Pemberton's disability of severe and major depression.  Defendant Majett further perceived Mr. Pemberton as being disabled or having a record of disability.

145.    Mr. Pemberton alleges that Defendant Majett subjected him to discrimination and harassment on the basis of his disability, perceived disability or having a record of disability, by failing to pay Mr. Pemberton a higher salary after promoting him to MSS-14; demoting Mr. Pemberton to a MSS-13 grade; denying Mr. Pemberton leave; subjecting Mr. Pemberton to harassment and a hostile work environment that had a negative impact on the terms and conditions of his employment; unreasonably interfering with Mr. Pemberton's ability to work and terminating Mr. Pemberton.

146.    Defendant Majett failed to pay Mr. Pemberton a higher salary; demoted Mr. Pemberton, denied Mr. Pemberton leave, harassed Mr. Pemberton by threatening to

terminate his employment and ultimately terminated Mr. Pemberton's employment. This and other adverse and disparate treatment by Defendant Majett constitutes illegal discrimination against Mr. Pemberton because of his disability, perceived disability and/or having a record of disability in violation of the DCHRA.

147.    Defendant Majett aided, abetted and coerced discriminatory practices against Mr. Pemberton by failing to pay Mr. Pemberton a higher salary; demoting Mr. Pemberton, denying Mr. Pemberton leave, harassing Mr. Pemberton by threatening to terminate his employment and ultimately terminating Mr. Pemberton's employment.  This and other adverse and disparate treatment by Defendant Majett constitutes illegal discrimination against Mr. Pemberton because of his disability, perceived disability and/or having a record of disability in violation of the DCHRA.

148.    As a direct and proximate result of the unlawful conduct by Defendant Majett, Mr. Pemberton has suffered and is suffering considerable injury.  This harm includes, but is not limited to, loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career-enhancing and advancement opportunities and loss of retirement savings and other employment benefits and privileges.

149.    Mr. Pemberton has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant Majett and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

150.    As a consequence of Defendant Majett's unlawful actions, Defendant Majett is additionally liable to Mr. Pemberton for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### Count VIII:  Intentional Infliction of Emotional Distress
### Against Defendant Majett

151.    Mr. Pemberton re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

152.    Defendant Majett committed the tort of intentional infliction of emotional distress by subjecting Mr. Pemberton to discrimination, extreme harassment and a hostile work environment, because of Mr. Pemberton's disability.

153.    Defendant Majett engaged in extreme and outrageous conduct when he intentionally and recklessly caused Mr. Pemberton extreme emotional distress.

154.    The extreme and outrageous conduct of Defendant Majett includes, but is not limited to, harassment and hostility against Mr. Pemberton; failing to pay Mr. Pemberton a higher salary; demoting Mr. Pemberton; denying Mr. Pemberton leave; threatening to terminate his employment and ultimately terminating Mr. Pemberton because of his disability.

155.    As a direct and proximate result of Defendant Majett's extreme and outrageous conduct, Defendant Majett caused Mr. Pemberton to have panic and anxiety attacks and cased Mr. Pemberton to have severe and major depression.

156.    As a direct and proximate result of Defendant Majett's extreme and outrageous conduct, Mr. Pemberton suffered from periods of incapacity and his injuries included symptoms of suicidal thoughts, recurrent panic attacks, inability to sleep, tiredness, fatigue, loss of appetite; and inability to focus and concentrate.

157.    Defendant Majett engaged in discrimination, extreme harassment and a hostile work environment against Mr. Pemberton because of his disability.  Engaging in illegal and unlawful discrimination, extreme harassment and creating a hostile work environment is against public policy.

158.    The discriminatory actions and conduct of Defendant Majett against Mr. Pemberton because of his disability violate public policy and, as such, constitute and rise to the level of extreme and outrageous conduct sufficient for the tort of intentional infliction of emotional distress.

159.    As a direct and proximate result of the unlawful conduct by Defendant Majett, Mr. Pemberton has suffered and is suffering considerable injury.  This harm includes, but is not limited to, the loss of his job and the corresponding loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career-enhancing and advancement opportunities and loss of retirement savings and other employment benefits and privileges.

160.    Mr. Pemberton has also suffered from physiological damage arising from the intentional infliction of emotional distress by Defendant Majett.  This harm includes, but is not limited to, embarrassment, humiliation, indignity, stress, anxiety, panic attacks and severe and major depression arising from the unlawful conduct of Defendant Majett.

161.    As a consequence of Defendant Majett's unlawful actions, Defendant Majett is additionally liable to Mr. Pemberton for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**RELIEF SOUGHT**

**WHEREFORE**, Mr. Pemberton respectfully requests this Court to award damages in an amount to be proved at trial, and that the Court further:

A.   Enter judgment for Plaintiff against Defendant the District of Columbia and Defendant Majett, severally and jointly;

B.   Declare that the conduct of Defendant the District of Columbia is in violation of the federal FMLA; DCFMLA and DCHRA;

C.   Declare that the conduct of Defendant Majett is in violation of the DCHRA and that Defendant Majett committed the tort of intentional infliction of emotional distress;

D.   Award Mr. Pemberton full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses, cash awards, loss of retirement savings and benefits, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case against Defendant the District of Columbia and Defendant Majett, severally and jointly;

E.   Award Mr. Pemberton eight (8) weeks of severance pay at the basic rate of pay at the time of his termination;

F.   Award Mr. Pemberton compensatory damages for the emotional distress injuries and losses that he suffered in an amount to be proved at trial against Defendant the District of Columbia and Defendant Majett, severally and jointly;

G.   Award Mr. Pemberton lost insurance benefits in either actual replacement cost for

the insurance or expenses Mr. Pemberton actually incurred that would have been covered under the former insurance plan against Defendant the District of Columbia only;

H.      Award an additional amount as liquidated damages against Defendant the District of Columbia only;

I.      Award Mr. Pemberton punitive damages against Defendant Majett only;

J.      Award Mr. Pemberton pecuniary and out of pocket expenses against Defendant the District of Columbia and Defendant Majett, severally and jointly;

K.      Order Defendant the District of Columbia and Defendant Majett, severally and jointly, to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions, as well as pre-judgment and post-judgment interest; and

L.      Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial for this action.

Dated: September 25, 2014

                          Respectfully submitted,

                          __/s/CAMILLA C. MCKINNEY__
                          Camilla C. McKinney, Esquire
                          DC Bar #448776
                          McKinney & Associates, PLLC
                          1776 I Street, NW, Suite 970
                          Washington, DC  20006
                          (202) 470-0935 (telephone)
                          (877) 590-4777 (facsimile)
                          CMcKinney@DCEmploymentLawyer.com
                          ***Attorneys for Plaintiff Reuben Pemberton***